# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

LAURA CLAYTON KLEINPETER          CIVIL ACTION

VERSUS

THE LOUISIANA STATE BOARD OF
MEDICAL EXAMINERS          NO. 11-175-RET

## RULING

On April 19, 2011, the defendant, The Louisiana State Board of Medical Examiners ("Board"), filed a Motion to Dismiss Plaintiff's claims. On May 13, 2011, Plaintiff filed opposition. The Motion was heard before the Court on May 18, 2011. During the hearing, the Court questioned whether Plaintiff's claim was justiciable. The following day, the Court directed the parties to address the issues of standing and ripeness.[1] The Court, having reviewed the record, the law, and the arguments of the parties, now concludes that the case should be **DISMISSED** for the following reasons.

## BACKGROUND

Plaintiff is a graduate of the Louisiana State University Health and Sciences Center in Shreveport ("LSUHSCS"). While attending LSUHSCS, she was diagnosed with narcolepsy and, as a result, repeated her third and fourth years of medical

---

[1] See Record Document No. 13, Notice to Counsel.

Doc#1944

school. Upon graduation, she was admitted into the residency program for Pediatrics at Our Lady of the Lake Regional Medical Center ("OLOL") in Baton Rouge. On June 2, 2010, she submitted an application to the Louisiana Board of Medical Examiners ("Board") for an internship registration. As part of the application process, Plaintiff was required to execute a "Third Party Authorization," which authorized the Board to contact each physician or other health care practitioner with whom she had consulted. The application form also required the plaintiff to provide an answer to the following question:

1. In the 5 years prior to this application have you had any physical injury or disease or mental illness or impairment which could reasonably be expected to affect your ability to practice medicine or other health profession?

Plaintiff contends that she answered "yes" to the question and was subsequently contacted by Cecilia Mouton, Director of Investigations for the Board.[2]

On October 26, 2010, Plaintiff and her counsel met at the office of the Board. Plaintiff alleges that during the meeting, Mouton stated that Plaintiff might be required to subject herself to examination by a doctor of Mouton's selection and to an overnight sleep study. At the conclusion of the meeting, Mouton indicated that

---

[2] Plaintiff contends that she answered this question in the affirmative. See Record Document No. 1-1, Plaintiff's Petition, p. 2, ¶¶ 7, 14. Defendant contends that she "answered 'no' to this question" and that she disclosed that she was diagnosed with narcolepsy elsewhere in her application. See Record Document No. 15-1, Affidavit of Cecilia Mouton, p. 2, ¶¶ 7-8.

she would extend the temporary permit issued by the Board so that Plaintiff could continue to be involved in the OLOL residency program through December 31, 2010.

Plaintiff alleges that Mouton contacted her supervisors at OLOL in November 2010, and that Mouton disclosed confidential and privileged medical information to them during this conversation.

Plaintiff further contends that, "[o]n December 1, 2010, [Mouton] forwarded a letter to [Plaintiff] advising [her] that she was requiring, as a condition to the consideration of [Plaintiff's] application, that [Plaintiff] be examined by Dr. Pitor Olejniczak, in New Orleans."[3] Plaintiff also alleges that Mouton advised Plaintiff that she would be required to undergo any testing that may be recommended by Dr. Olejnicak and that she would be responsible for all costs incurred during the evaluation.

On December 30, 2010, Plaintiff was notified that her permit would be extended through January 31, 2011. During this time, Plaintiff contacted Dr. Olejniczak's office and scheduled an appointment on March 3, 2011. Plaintiff alleges that she attempted to contact the Board at the end of January 2011 to request that her permit be extended. Plaintiff alleges that she was later advised that her medical permit had been extended through April 30, 2011. Around February 17, 2011, Mouton allegedly issued and served a subpoena on OLOL demanding the production of "all complaints, evaluations of performance, reports (including

---

[3] Record Document No. 1-1, Plaintiff's Petition, p. 4, ¶ 26.

Doc#1944     3

consultants' reports), minutes on any meetings and/or discussions and correspondence to, from or regarding [Plaintiff]." Plaintiff cancelled her appointment with Dr. Olejniczak and filed suit in the 19th Judicial District Court, Baton Rouge, Louisiana, on March 3, 2011. The Board had this matter removed to federal court on March 22, 2011.

## ANALYSIS

Federal courts cannot consider the merits of a case unless it "presents an 'actual controversy,' as required by Art. III of the Constitution and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201."[4] The many doctrines that have fleshed out the "case or controversy" requirement-standing, mootness, ripeness, political question, and the like-are "founded in concern about the proper-and properly limited-role of the courts in a democratic society."[5] These "doctrines state fundamental limits on federal judicial power in our system of government."[6]

"Justiciability concerns not only the standing of litigants to assert particular claims, but also the appropriate timing of judicial intervention."[7] The "essence" of standing is "whether the litigant is entitled to have the court decide the merits of the

---

[4] **Steffel v. Thompson**, 415 U.S. 452, 458, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974).

[5] **Allen v. Wright**, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984) (quoting **Warth v. Seldin**, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)).

[6] Id.

[7] **Renne v. Geary**, 501 U.S. 312, 320, 111 S.Ct. 2331, 2338, 115 L.Ed.2d 288 (1991); see also **LeClerc v. Webb**, 419 F.3d 405, 413 (5th Cir.2005).

dispute or of particular issues."[8] In order to have standing, "a plaintiff must show: (1) it has suffered, or imminently will suffer, a concrete and particularized injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the injury."[9] An injury in fact is an invasion of a legally protected interest which is "actual or imminent, not conjectural or hypothetical."[10] Standing is determined as of the date of the filing of the complaint.[11]

The standing question "bears close affinity to questions of ripeness – whether the harm asserted has matured sufficiently to warrant judicial intervention."[12] However, the ripeness doctrine "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."[13] In its prudential form, ripeness is one of the means courts have developed to further what Professor Alexander Bickel termed the "passive virtues" – a willingness in appropriate circumstances to decline or defer jurisdiction where prudence counsels

---

[8] **Warth**, 422 U.S. at 498, 95 S.Ct. at 2205.

[9] **Houston Chronicle Publ'g Co. v. City of League City, Tex.**, 488 F.3d 613, 617 (5th Cir.2007) (citation omitted).

[10] **Lujan v. Defenders of Wildlife**, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).

[11] **Carr v. Alta Verde Indus., Inc.**, 931 F.2d 1055, 1061 (5th Cir.1991) ("As with all questions of subject matter jurisdiction except mootness, standing is determined as of the date of the filing of the complaint.")

[12] **Warth**, 422 U.S. at 499 n. 10, 95 S.Ct. at 2205.

[13] **Suitum v. Tahoe Reg. Planning Agency**, 520 U.S. 725, 733 n. 7, 117 S.Ct. 1659, 137 L.Ed.2d 980 (1997).

avoidance.[14] As Judge Calabresi has explained, "[p]rudential ripeness is, then, a tool that courts may use to enhance the accuracy of their decisions and to avoid becoming embroiled in adjudications that may later turn out to be unnecessary or may require premature examination of, especially, constitutional issues that time may make easier or less controversial."[15]

The Fifth Circuit has previously stated that "[a] court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical."[16] "The key considerations are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.' "[17] The "fitness" portion of the inquiry "requires a weighing of the sensitivity of the issues presented and whether there exists a need for further factual development," while the "hardship" element requires a "gaug[ing of] the risk and severity of injury to a party that will result if the exercise of jurisdiction is declined."[18] "Both aspects of the inquiry involve the exercise of judgment, rather than the application of a black-letter rule."[19] As with standing, the

---

[14] See Alexander M. Bickel, The Least Dangerous Branch 111-198 (1962); Alexander M. Bickel, The Supreme Court 1960 Term Foreward: The Passive Virtues, 75 Harv. L.Rev. 40, 58-64 (1961).

[15] **Simmonds v. INS**, 326 F.3d 351, 357 (2d Cir.2003).

[16] **New Orleans Pub. Serv., Inc. v. Council of New Orleans**, 833 F.2d 583, 586 (5th Cir.1987).

[17] **Id.** (quoting **Abbott Labs. v. Gardner**, 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)).

[18] **Murphy**, 402 F.3d at 347.

[19] **Nat'l Park Hospitality Assoc. v. Dept. of the Interior**, 538 U.S. 803, 814, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003) (Stevens, J., concurring).

plaintiff bears the burden of establishing ripeness.[20]

Turning to Plaintiff's allegations in the instant case, the Court finds that Plaintiff has not met her burden of showing that her claim meets the standing and ripeness requirements. Alternatively, the Court finds that the doctrine of prudential ripeness dictates that the Court await further factual development and avoid becoming embroiled in an adjudication that may later turn out to be unnecessary or may require premature examination of issues that time may make easier.

The Affidavit of Cecilia Mouton states that Plaintiff's application was still under consideration at the time Plaintiff filed suit; that Plaintiff's failure to appear and subject herself to evaluation by Dr. Olejniczak did not cause the Board to halt consideration of Plaintiff's application; that Plaintiff's temporary training permit provides the same rights and obligations as all other training permits and differs only in its temporal scope; and that Plaintiff's temporary permit has never expired since its issuance.[21] Plaintiff has set forth no evidence to the contrary. Furthermore, Plaintiff's contention that the December 1, 2010, letter sent by Mouton to Plaintiff, required, "as a condition to the consideration of [Plaintiff's] application," that she be examined by Dr. Pitor Olejniczak is unsupported by the record.[22] The December 1,

---

original)). Id.

[20] **FW/PBS, Inc. v. Dallas**, 493 U.S. 215, 231, 110 S.Ct. 596, 608, 107 L.Ed.2d 603 (1990).

[21] See Record Document No. 15-1, Affidavit of Cecilia Mouton, p. 4, ¶¶ 21-24.

[22] Record Document No. 1-1, Plaintiff's Petition, p. 4, ¶ 26.

2010, letter specifically states that Mouton was writing to provide the Plaintiff "with direction on what steps [Mouton] believe[d] [were] necessary to provide the Board with enough information to make a determination regarding [Plaintiff's] eligibility for a license in Louisiana."[23] The letter also states that Mouton's "*suggestion* was that [Plaintiff] obtain a second opinion from another sleep specialist who could re-assess [Plaintiff's] illness and possibly recommend an alternative treatment regimen."[24]

In addition to the foregoing, the Court is persuaded by **McFadden v. Stephens**, 253 F.3d 702 (5th Cir.2001), where the Fifth Circuit addressed a similar issue. In **McFadden**, the Plaintiff, Dr. John McFadden, a medical doctor licensed in Mississippi, filed a complaint in the district court seeking to stop the investigations of the Mississippi State Board of Medical Licensure into his compliance with the Mississippi Medical Practice Act.[25] The **McFadden** Court noted that the Board had yet to take any disciplinary action against McFadden and that any actual injury McFadden may have suffered remained entirely speculative, not concrete and particularized. Similarly, as of the date of the filing of the instant lawsuit – which is the relevant date for determining whether Plaintiff had suffered an injury –[26] Plaintiff had not undergone testing against her will, the Board had yet to make a decision to

---

[23] Record Document No. 14-1, p. 12, Exhibit P-5.

[24] Record Document No. 14-1, p. 12, Exhibit P-5 (emphasis added).

[25] **McFadden**, 253 F.3d at 702.

[26] **Carr**, 931 F.2d at 1061.

Doc#1944					8

halt or deny consideration of her application, Plaintiff was actively practicing under a temporary permit, and there is no evidence to indicate that the Board required that Plaintiff be examined by Dr. Olejniczak as a condition to the consideration of her application or that Plaintiff's permit would not be extended. Instead, Plaintiff filed suit knowing only that she *might* be required to submit to additional testing. Such a claim does not rise to the level of concrete and particularized injury needed to satisfy standing and ripeness requirements.

Plaintiff has failed to establish that her claim meets the standing and ripeness requirements for review, and the Court chooses not to become embroiled in an adjudication that may later turn out to be unnecessary or may require premature examination of issues that time may make easier. Therefore, the Court finds that Plaintiff's suit should be dismissed without prejudice.

Accordingly, for the foregoing reasons assigned,

IT IS ORDERED that Plaintiff's suit is **DISMISSED** without prejudice;

IT IS FURTHER ORDERED that the defendant's Motion to Dismiss (Doc. No. 37) is **DENIED** as moot.

Baton Rouge, Louisiana, this 9th day of June, 2011.

RALPH E. TYSON, CHIEF JUDGE
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**